**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADAR BAYS, LLC <br><br>                                Plaintiff, <br><br>       v. <br><br> 4CABLE TV INTERNATIONAL, INC. and <br> MICHAEL FELDENKRAIS <br><br>                             Defendant. | **Civil Action No.:** <br><br>         **COMPLAINT** |

Plaintiff, Adar Bays, LLC ("Plaintiff" or "Adar"), by and through its undersigned attorneys, Garson, Ségal, Steinmetz, Fladgate LLP, brings its Complaint against Defendants, 4Cable TV International, Inc. ("CATV") and Michael Feldenkrais ("Feldenkrais", and respectfully alleges as follows:

<u>**THE PARTIES**</u>

1.      Plaintiff, Adar Bays, LLC, is a limited liability company duly organized under the laws of the state of Florida, having a principal place of business located at 3411 Indian Creek Drive, Suite 403, Miami Beach, Florida 33140.  All members of Adar Bays, LLC are citizens of the State of New York.

2.      Pursuant to its Securities and Exchange Commission registrations, Defendant 4Cable TV International, Inc. is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business located at 1248 Highway 501 Business, Conway, South Carolina, 29526.

3.      Defendant Feldenkrais is an individual, who, upon information and belief, is a citizen of the State of Florida.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5.      Venue is proper in this judicial district pursuant to 27 U.S.C. §1391(a), in that it is a district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of this action is situated.

6.      Further, the agreement from which this dispute arises designates that it is governed and constructed in accordance with the laws of the State of New York and that any action brought by either party against the other must be brought in state or federal courts of New York, New York County. *See* Ex. B, §5(a).

**FACTS COMMON TO ALL CLAIMS**

The Securities Purchase Agreement and Note

7.      On or about February 25, 2015, CATV's directors executed a unanimous consent in lieu of a special meeting of the directors ("Unanimous Consent Decree") authorizing CATV issue a convertible redeemable note to Adar.  A true and correct copy of the Unanimous Consent Decree is attached hereto as **Exhibit A**.

8.      On the same day, Adar and CATV entered into a Securities Purchase Agreement (the "SPA"), which provided for the purchase and issuance of an 8% convertible note, known hereafter as the Note.  A true and correct copy of SPA 1 is attached hereto as **Exhibit B**.

9.      Pursuant to the terms of the SPA, on or about February 25, 2015, CATV issued to Adar a $31,500.00, 8% Convertible Redeemable Note ("Note 1").  A true and correct copy of the Note is attached hereto as **Exhibit C**.

10.     On the same day, CATV sent Adar a disbursement authorization memorandum ("Disbursement Memorandum") in connection with funding of the Note.  CATV instructed Adar to disburse $1,500.00 to New Venture Attorneys, P.C., $3,000.00 to Brighton Capital, and $25,500.00 to CATV for the Note. A true and correct copy of the Disbursement Memorandum is attached hereto as **Exhibit D**.

11.     On the same day, February 25, 2015, CATV directed its transfer agent, Quicksilver Stock Transfer, LLC, to reserve a specific number of shares of CATV common stock (initially, 2,916,000 shares, to be increased to four times the number of shares that would be required if the entire balance of the Note were to be converted pursuant to Section 12 of the Note) for the purposes of effectuating conversions under the Note.  A true and correct copy of Transfer Agent Agreement is attached hereto as **Exhibit E**.

12.     On March 10, 2015, Adar funded the Note pursuant to the Disbursement Memorandum.  A true and correct copy of the portion of Adar's account statement showing the wire transfers is attached hereto as **Exhibit F**.

<u>The Terms of the Note</u>

13.     The Note provide that CATV promised to pay to the order of Adar and its registered assigns, the aggregate principal face amount, as well as interest thereupon, on the Note's maturity date – February 25, 2016.  Ex. C, Prmble.

14.     The Note further provides that "[u]pon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or, if such a rate is usurious or not merited by current law, then at the highest rate of interest permitted by law." Ex. C, §8.

15.     In addition to Adar's return on investment vis-à-vis the Note's interest rate, Section 4(a) of the Note provided Adar with the right to convert all or part of the outstanding and unpaid

principal into shares of CATV common stock (the "Common Stock") at a discount to the market price in lieu of repayment of the amounts converted. Ex. C, §4(a).

16.     To ensure an adequate number of shares were available for Adar to convert the Note, Section 12 of the Note required CATV to issue irrevocable transfer agent instructions to an agreed-upon agent, reserving a certain number of shares of its common stock for Adar. Section 12 states that CATV will initially reserve 2,916,000 shares, and required that reserve to be increased to four times the number of shares that would be required if the entire balance of the Note were to be converted pursuant to Section 12 of the Note to account for price fluctuations of the common stock.

17.     To exercise its conversion right, Adar was required to submit a "Notice of Conversion" to CATV. Ex. C §4(a).

18.     The price at which each Note was convertible (the "Conversion Price") for each share of Common Stock was to be equal to "60% of the **lowest trading price** of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which [CATV]'s shares are traded or any exchange upon which the Common Stock may be traded in the future ("Exchange") for the **_ten_** prior trading days including the day upon which a Notice of Conversion is received by [CATV][.]" Ex. C, §4(a).

19.     The Note was acknowledged and reported in Defendant CATV's most recently filed quarterly reports, dated May 15, 2015 and August 19, 2015, which each state "In February 2015, the Company issued a convertible note payable for $31,500 to Adar Bays, LLC ("Adar"), dye February 2016. The interest on the convertible note payable is 8% per annum. . . The convertible note payable is convertible into shares of the Company's common stock at the option

of the lender at 60% of the lowest closing price in the ten trading days preceding conversion. Unpaid interest is subject to conversion."

**CATV's Breaches of the Note**

20.     On February 25, 2016, the Note reached maturity and became due and payable.

21.     CATV failed to repay the Note, triggering the Event of Default outlined in Section 8(a) of the Note.

22.     By virtue of this Event of Default, the principal amount of the Note increased by 10%, and default interest in the amount of 24% began to accrue on the principal of the Note.

23.     With CATV having failed to repay the Note, Adar's conversion right remained and on January 20, 2021, Adar submitted a Notice of Conversion to convert $74,725.00 of the Note into 155,677,083 shares of CATV Common Stock, representing a conversion price of $0.00048 per share (the "Notice of Conversion").[1]  A true and correct copy of the Notice of Conversion is attached hereto as **Exhibit G**.

24.     Pursuant to Section 4(a) of the Note, CATV was required to deliver the shares within three (3) business days of receipt of the Notice of Conversion, or by January 25, 2021.

25.     To date, CATV has failed to deliver the shares.

**Defendant Feldenkrais' Conduct**

26.     On or about March 23, 2021, a representative of Plaintiff contacted Michael Feldenkrais, the Chief Executive Officer, stating "[d]o you have a proposal on how to settle the outstanding conversion? Michael, this is a legal obligation[. W]e are not asking for charity."

---

[1] While ultimately immaterial, it should be noted that the Notice of Conversion contains a typographical error, in that the third reference to the conversion amount is incorrect. However, based on the multiple references to the correct number the calculation showing the shares to which Adar was entitled, and the notation showing a zero balance after the conversion, it was clear, or should have been clear, to the transfer agent how much of the Note was being converted

27.     The same day, Feldenkrais responded, *inter alia*, "Make it worth my while. I need real money"; "Give me 2 mil you will convert 3 mil and we are good;" and "You convert 3 mil and give me 2 of it and we can talk."  A true and correct copy of the email correspondence is attached hereto as **Exhibit H**.

28.     In no uncertain terms, Feldenkrais was demanding that Adar give the majority of proceeds from the sale of CATV stock due and owing to Adar through the conversion directly to Feldenkrais in the form of a kickback; otherwise, Feldenkrais would not allow the conversion.

29.     Adar responded with an alternative proposal, but Feldenkrais did not respond in substance.

30.     On April 8, 2021, counsel for Adar sent Defendants a letter explaining the various breaches of the SPA and Note, and demanding that Feldenkrais allow CATV to honor its obligations under the Note by delivering the shares within 3 business days of receipt of the letter.

31.     After no response, counsel for Adar followed up with Feldenkrais on April 14, 2021, who again ignored it.

32.     On April 15, 2021, Mr. Jason Perlman contacted Adar's counsel purporting to have been engaged to "perform due diligence upon the alleged debt of" CATV, despite Feldenkrais having acknowledged the Note, and indeed improperly interfered CATV's performance thereunder, on numerous occasions.

<u>REMEDIES</u>

33.     Due to CATV's persistent and willful failure to remedy its breaches, Adar has incurred significant damage.

34.     As stated above, default interest at a rate of 24% per annum has been accruing on the outstanding principal balance of the Note at a rate of 24% per annum since February 25, 2016,

when CATV failed to repay its principal and accrued interest.  Further, by virtue of CATV's failure to repay the Note at maturity, pursuant to Section 8 of the Note, the Note's principal balance increased by 10%, or $3,150.00.

35.     Therefore, at the time of the January 20, 2021 notice of conversion, the principal and accrued interest under the Note totaled $74,725.00.

36.     Defendant was obligated to deliver the shares by the end of January 25, 2021. Therefore, the stock price on January 26, 2021 provides the basis for Plaintiff's expectation damages.

37.     Pursuant to recent case law in this Circuit, the expectation damages for a failure to deliver shares pursuant to a conversion in these instances are calculated as follows: [(mean trade price on the date of the breach – conversion price) x number of shares to which the Plaintiff was entitled]. *LG Capital Funding, LLC v. CardioGenics Holdings, Inc.*, 787 Fed. Appx 2, 3 (2d Cir. 2019).  Here then, Plaintiff's damages for CATV's failure to deliver the shares would be [(.0082 + .011)/2) - 0.00048] x 155,677,083 = $ 1,419,775.00.

38.     The Second Circuit has also held that because the aforementioned calculation, by subtracting the conversion price, subtracts the amount paid by Plaintiff in funding the Note, Plaintiff is also entitled to repayment of the amount converted; here, $74,725.00.  *See LG Capital Funding, LLC v. CardioGenics Holdings, Inc.*, 787 Fed. Appx 2, 3 (2d Cir. 2019) ("But in subtracting the conversion price from the damages award, the District Court awarded [plaintiff] the equivalent of its lost profits on the conversion, but not the full value of the shares.")

39.     Therefore, if the Court were to award damages, rather than specific performance, as discussed below, Plaintiff's total damages as against CATV would be $1,494,500.00, as well as attorneys fees and costs.

40.     Further, because, upon information and belief, Defendant Feldenkrais is blocking CATV's performance under the Note in order to personally benefit from the transaction, the Court should find him liable for any shortfall in CATV's ability to pay this damage award.

### ATTORNEYS' FEES & COSTS

41.     The Note provides that "[CATV] agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by [Adar] in collecting any amount due under this Note" Ex. C, §7. Further, "[i]f [Adar] shall commence an action or proceeding to enforce any provisions of this Note, including without limitation engaging an attorney, then if [Adar] prevails in such action, then [Adar] shall be reimbursed by [CATV] for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding. " Ex. C, §8.  Therefore, Adar is also entitled to all costs and attorneys' fees associated with enforcement and collection under these Notes.

### FIRST CLAIM FOR RELIEF
(BREACH OF CONTRACT OF THE SPA AND THE NOTE AS AGAINST DEFENDANT CATV: SPECIFIC PERFORMANCE)

42.     Adar re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.     Valid contracts exist between Adar and CATV in the form of the Securities Purchase Agreement and the Note that requires delivery of shares to Adar upon submission of a notice of conversion.

44.     Adar performed all of its obligations under the SPA and Note by wiring the designated amounts to the parties, as directed by CATV, then duly submitting the January 20, 2021 notice of conversion seeking 155,677,083.

45.     CATV breached the terms of the SPA and the Note by failing to deliver, and it is within its power to perform by delivering the shares to Adar.

46.     Section 5(l) of the SPA states that "[CATV] acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to [Adar];" that "the remedy at law for a breach of its obligations under this Agreement will be inadequate;" and that "in the event of a breach or threatened breach by [CATV] . . . [Adar] shall be entitled . . . to an injunction or injunctions restraining, preventing or curing any breach of this Agreement and to enforce specifically the terms and provisions hereof."

47.     Clearly then, the parties contemplated and agreed to specific performance, and even an injunction, as the appropriate remedy for this precise breach.

48.     While the value of the stock can be estimated on the basis of the publicly available stock price, awarding damages is not an adequate remedy at law because neither Defendant has the means to satisfy a judgment and the only means for Plaintiff to be made whole is by delivering the shares.

49.     Adar, therefore, is entitled to judgment directing CATV to perform under the terms of the SPA and Note by: a. taking any and all necessary steps to establish a share reserve pursuant to Section 12 of the Note; b. issuing irrevocable transfer agent instructions reserving a sufficient number of shares, and maintaining a number of shares, such that Section 12 of the Note is complied with; c. delivering shares to Adar pursuant to Adar's January 20, 2021 notice of conversion; and d. honoring future conversions duly made under the terms of the Note.

## SECOND CLAIM FOR RELIEF
(BREACH OF CONTRACT OF THE SPA AND NOTE AS AGAINST DEFENDANT CATV: IN THE
ALTERNATIVE, DAMAGES)

50.    In the alternative, Adar re-alleges and incorporates by reference each and every

allegation contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

51.    Valid contracts exist between Adar and CATV in the form of the Securities

Purchase Agreement and the Note.

52.    Adar performed all of its obligations under the SPA and Note by wiring the

designated amounts to the parties, as directed by CATV, then duly submitting the January 20, 2021

notice of conversion seeking 155,677,083.

53.    CATV failed to repay the Note at maturity and failed to deliver the shares pursuant

to the January 20, 2021 notice of conversion.

54.    CATV, through its conduct, has deprived Adar of its right to execute future

conversions under the SPA and the Note.

55.    Adar has been damaged by CATV's conduct.

56.    Adar, therefore, is entitled to an award of damages in an amount to be determined

at trial, but not less than one million, four hundred ninety-four thousand and five hundred dollars

($1,494,500.00).

## THIRD CLAIM FOR RELIEF
(IN THE ALTERNATIVE TO THE BREACH OF CONTRACT CLAIMS, UNJUST ENRICHMENT AS AGAINST
DEFENDANT CATV: DAMAGES)

57.    In the alternative to its First and Second Claims for Relief, Adar re-alleges and

incorporates by reference each and every allegation contained in paragraphs 1 through 41 of this

Complaint as if fully set forth herein.

58.     CATV has failed to make restitution for the monies loaned to it by Adar pursuant to the terms of the SPA and Note.

59.     CATV accepted Adar's money under such circumstances that it created a legal or equitable obligation to account for the money, and has not made restitution to Adar.

60.     Adar, therefore, is entitled to an award of Adar, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less than one million, four hundred ninety-four thousand and five hundred dollars ($1,494,500.00).

**FOURTH CLAIM FOR RELIEF**
(TORTIOUS INTERFERENCE WITH CONTRACT AS AGAINST DEFENDANT FELDENKRAIS)

61.     Adar re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

62.     The SPA and the Note are valid and enforceable contracts existing between Adar and CATV.

63.     Feldenkrais is aware of the contracts between the Adar and CATV.

64.     Feldenkrais improperly interfered with the contracts by acting outside of his role within the company and demanding that he be given a kickback of any proceeds for the sale of the stock in order for CATV to perform.

65.     As a direct result of Feldenkrais' interference, the contracts between Adar and CATV have been breached.

66.     Further, as a direct result of Feldenkrais' interference, Adar has been damaged. Namely, had Feldenkrais not interfered, CATV would have delivered the stock, and Adar would have not been damaged in the amounts outlined herein.

67.     Therefore, Adar is entitled to an award against Feldenkrais in an amount to be determined at trial, but not less than one million, four hundred ninety-four thousand and five

hundred dollars ($1,494,500.00), to be adjusted to reflect a realization this full amount should CATV ultimately deliver shares of lesser or no value.

### FIFTH CLAIM FOR RELIEF
(VIOLATION OF SEC RULE 10b-5 AS AGAINST DEFENDANT FELDENKRAIS)

68.     Adar re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

69.     Defendant CATV's stock is exchanged on a national securities exchange and CATV is a publicly traded entity.

70.     Defendant Feldenkrais devised a scheme to defraud CATV's investors by seeking a kickback of a portion of the proceeds from Plaintiff's sale of CATV common stock deliverable pursuant to the terms of the Note, or otherwise refused to allow CATV, which is under his *de facto* control, to perform under the agreement.

71.     By preventing the delivery of CATV stock to Adar in conjunction with the Note, Defendant Feldenkrais prevented this stock from potentially reaching the market, thereby manipulating CATV's stock price.

72.     Defendant Feldenkrais intended to defraud Plaintiff and CATV's other investors by causing CATV to breach its contracts unless Feldenkrais was given a substantial kickback from Adar.

73.     Defendant Feldenkrais intended to manipulate CATV's stock price by preventing the common stock, due and owing to Adar, from reaching Adar and potentially the open market.

74.     As a direct result of Feldenkrais' scheme, Adar has been damaged.  Namely, had Feldenkrais not devised this scheme to personally profit from CATV's performance, CATV would have delivered the stock, and Adar would have not been damaged in the amounts outlined herein.

75.     Therefore, Adar is entitled to an award against Feldenkrais in an amount to be determined at trial, but not less than one million, four hundred ninety-four thousand and five hundred dollars ($1,494,500.00), to be adjusted to reflect a realization this full amount should CATV ultimately deliver shares of less or no value.

### SIXTH CLAIM FOR RELIEF
(ATTORNEY'S FEES)

76.     Adar re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

77.     In accordance with Sections 7 and 8 of the Notes, CATV agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by Adar in collecting any amount under the Notes.

78.     Therefore, Adar is entitled to an award against CATV for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Adar Bays, LLC, seeks judgment against Defendants, 4Cable TV International, Inc. and Michael Feldenkrais, as follows:

i.     On the First Claim for Relief, for judgment directing CATV to perform under the terms of the SPA and Note by: a. taking any and all necessary steps to establish a share reserve pursuant to Section 12 of the Note; b. issuing irrevocable transfer agent instructions reserving a sufficient number of shares, and maintaining a number of shares, such that Section 12 of the Note is complied with; c. delivering shares to Adar pursuant to Adar's January 20, 2021 notice of conversion; and d. honoring future conversions duly made under the terms of the Note.

ii.     In the alternative to the First Claim for Relief, on the Second and Third Claims for Relief, judgment for damages as against 4Cable TV International, Inc. in an amount to be

determined at trial, but not less than one million, four hundred ninety-four thousand and five hundred dollars ($1,494,500.00).

      iii.      On the Fourth and Fifth Claims for Relief, to be adjusted pursuant to the remedies issued in conjunction with the First through Third Claims for Relief requested herein, judgment as against Michael Feldenkrais in an amount to be determined at trial, but up to one million, four hundred ninety-four thousand and five hundred dollars ($1,494,500.00).

      iv.      On the Sixth Claim for Relief, for an award of Adar's costs and expenses in prosecuting this action, including reasonable legal fees, to be determined at the end of the matter; and

      v.      For such other further relief as the Court may deem just, proper, and in the interest of justice.

| | |
|---|---|
| **Dated:**    Doylestown, Pennsylvania<br>May 12, 2021 | **Respectfully Submitted**<br><br>**Garson, Segal,**<br>**Steinmetz, Fladgate LLP**<br>*Attorneys for the Plaintiff* |

**By:**      _____ **/s/** _____
          Kevin Kehrli (KK1536)
          164 West 25th Street
          Suite 11R
          New York, NY 10001
          Telephone: (212) 380-3623
          Facsimile: (347) 537-4540
          Email: KK@GS2Law.com;