UNITED STATES DISTRICT COURT
SOUTHEN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAR BAYS, LLC, | Civil Action No.:21-CV-04268(DLC) |
| Plaintiffs, | |
| v. | **ANSWER** |
| 4CABLE TV INTERNATIONAL, INC. and MICHAEL FELDENKRAIS, | |
| Defendants. | |

Defendants 4CABLE TV INTERNATIONAL, INC. ("CATV") and MICHAEL FELDENKRAIS ("Feldenkrais"), for their Answer to the Complaint herein, by their attorney Anderson Kill PC, allege the following:

1.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint.

2.      Deny the allegations set forth in Paragraph 2 of the Complaint.

3.      Admit the allegations set forth in Paragraph 3 of the Complaint.

4.      Deny the allegations set forth in Paragraph 4 of the Complaint, and allege affirmatively that there is no subject matter jurisdiction over this action in this court because the action is not between citizens of different states.

5.      Deny the allegations set forth in Paragraph 5 of the Complaint and allege affirmatively that as regards defendant Feldenkrais, none of the events or

omissions giving rise to the alleged claims occurred in this district, and none of the property that is the subject of this action is situated in this district. .

6.    Admit the allegations set forth in Paragraph 6 of the Complaint to the extent that defendant CATV contractually agreed that this action may be brought in state or Federal courts located in New York County, New York, and denies the remaining allegations set forth in Paragraph 6 of the Complaint.

7.    Admit that a document purporting to be a "Unanimous Consent Decree" is attached as Exhibit A to the Complaint, and do not have knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of the Complaint.

8.    Admit the allegation set forth in Paragraph 8 of the Complaint that Adar and CATV entered into an Agreement captioned "Securities Purchase Agreement" which is attached as Exhibit B to the Complaint (hereinafter "SPA"), and refer the Court to that Exhibit for its complete and accurate content and meaning.

9.    Admit the allegation set forth in Paragraph 9 of the Complaint that CATV issued to Adar the "Note which is attached as Exhibit C to the Complaint, (hereinafter "Note") and refer the Court to that Exhibit for its complete and accurate content and meaning.

10.    Admit the allegation set forth in Paragraph 10 of the Complaint that CATV sent to Adar the document, referred to therein as a "Distribution Memorandum",

which is attached as Exhibit D to the Complaint, and refer the Court to that Exhibit for its complete and accurate content and meaning

11.     Admit the allegation set forth in Paragraph 11 of the Complaint that CATV issued and sent to its transfer agent the document, referred to therein as a "Transfer Agent Agreement", which is attached as Exhibit E to the Complaint, and refer the Court to that Exhibit for its complete and accurate content and meaning

12.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint.

13.     Deny so much of the allegations set forth in paragraph 13 of the Complaint as are inconsistent with the Note, and refer the Court to the Note for its complete and accurate content and meaning.

14.     Deny so much of the allegations set forth in paragraph 14 of the Complaint as are inconsistent with the Note, and refer the Court to the Note for its complete and accurate content and meaning.

15.     Deny so much of the allegations set forth in paragraph 15 of the Complaint as are inconsistent with the Note, and refer the Court to the Note for its complete and accurate content and meaning.

16.     Deny so much of the allegations set forth in paragraph 16 of the Complaint as are inconsistent with the Note, and refer the Court to the Note for its complete and accurate content and meaning.

3

17.     Deny so much of the allegations set forth in paragraph 17 of the Complaint as are inconsistent with the Note, and refer the Court to the Note for its complete and accurate content and meaning.

18.     Deny so much of the allegations set forth in paragraph 18 of the Complaint as are inconsistent with the Note, and refer the Court to the Note for its complete and accurate content and meaning.

19.     Admit that CATV filed quarterly reports dated May 15, 2015 and August 19, 2015, refer the Court to such reports for their complete and accurate content and meaning, and otherwise deny the allegations of Paragraph 19 of the Complaint.

20.     Admit the allegations of paragraph 20 of the Complaint.

21.     Admit that CATV failed to repay the Note, and deny the remaining allegations of paragraph 21 of the Complaint.

22.     Deny so much of the allegations set forth in paragraph 22 of the Complaint as are inconsistent with the Note, and refer the Court to the Note for its complete and accurate content and meaning.

23.     Admit that a true copy of the Notice of Conversion is attached to the complaint as Exhibit G, and otherwise deny the allegations of paragraph 23 of the complaint, including the allegations in the footnote to paragraph 23 of the Complaint.

24.     Deny the allegations of paragraph 24 of the Complaint.

25.     Admit the allegations of paragraph 25 of the Complaint.

docs-100400860.4

26.     Admit that on or about March 23, 2021, Feldenkrais received an email from Aryeh Goldstein, apparently writing for Adar, containing the phrases quoted in Paragraph 26 of the Complaint.

27.     Admit that on or about March 23, 2021, Feldenkrais sent an email to Goldstein containing the phrases quoted in Paragraph 27 of the Complaint.

28.     Deny the allegations of paragraph 28 of the Complaint, and allege affirmatively that the request for funds from Adar in connection with the request for conversion was in response to a proposal from Goldstein on March 15; " I am willing to fund new monies to the company as well so it should be a win-win", and allege affirmatively that Goldstein responded to Feldenkrais's March 23 email as follows: "I'm willing to put money in escrow and have an agreement that I'll reinvest half the proceeds from the sale of the converted shares."

29.     See answer to the allegations of paragraph 28.

30.     Admit those allegations of paragraph 30 of the Complaint that on or about April 9, 2021, Feldenkrais received a letter from counsel to Adar, and refer the Court to the text which apparently Adar counsel will supply in discovery for its complete and accurate content and meaning.

31.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of the Complaint.

32.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32 of the Complaint.

33.     Deny the allegations of paragraph 33 of the Complaint.

34.     Deny the allegations of paragraph 34 of the Complaint.

35.     Deny the allegations of paragraph 35 of the Complaint.

36.     Deny the allegations of paragraph 36 of the Complaint.

37.     Deny the allegations of paragraph 37 of the Complaint, and allege affirmatively that if plaintiff is entitled to any expectation damages, which defendants deny, the measure of damages is no greater than that resulting from the following calculation: the number of shares to which plaintiff was entitled for conversion of $21,386.67`at 60% of the lowest trading price on January 6, times the reasonably established market value of those shares had they been sold on January 20, 2021.

38.     Deny the allegations of paragraph 38 of the Complaint.

39.     Deny the allegations of paragraph 39 of the Complaint.

40.     Deny the allegations of paragraph 40 of the Complaint.

41.     Deny the allegations of paragraph 41 of the Complaint.

42.     Defendants re-allege and incorporate by reference each and every response to each paragraph in the Complaint as if fully set forth herein.

43.     Deny the allegations of paragraph 43 of the Complaint.

44.     Deny the allegations of paragraph 44 of the Complaint.

6

45.    Deny the allegations of paragraph 45 of the Complaint.

46.    Admit that the SPA contains the phrases quoted in paragraph 46 of the Complaint.

47.    Deny the allegations of paragraph 47 of the Complaint.

48.    Deny the allegations of paragraph 48 of the Complaint.

49.    Deny the allegations of paragraph 49 of the Complaint.

50.    Defendants re-allege and incorporate by reference each and every response to each paragraph in the Complaint as if fully set forth herein.

51.    Admit the allegations of paragraph 51 of the Complaint.

52.    Deny the allegations of paragraph 52 of the Complaint.

53.    Deny the allegations of paragraph 53 of the Complaint.

54.    Deny the allegations of paragraph 54 of the Complaint.

55.    Deny the allegations of paragraph 55 of the Complaint.

56.    Deny the allegations of paragraph 56 of the Complaint.

57.    Defendants re-allege and incorporate by reference each and every response to each paragraph in the Complaint as if fully set forth herein.

58. Admit that CATV has not repaid monies loaned to it by Adar, alleges affirmatively that any such repayment obligation is barred by Adar's criminal usury, and otherwise deny the allegations of paragraph 58 of the Complaint.

59. Deny the allegations of paragraph 59 of the Complaint.

60. Deny the allegations of paragraph 60 of the Complaint.

61. Defendants re-allege and incorporate by reference each and every response to each paragraph in the Complaint as if fully set forth herein.

62. Admit the allegations of paragraph 62 of the Complaint.

63. Admit the allegations of paragraph 63 of the Complaint.

64. Deny the allegations of paragraph 64 of the Complaint.

65. Deny the allegations of paragraph 65 of the Complaint.

66. Deny the allegations of paragraph 66 of the Complaint.

67. Deny the allegations of paragraph 67 of the Complaint.

68. Defendants re-allege and incorporate by reference each and every response to each paragraph in the Complaint as if fully set forth herein.

69. Admit the allegations of paragraph 69 of the Complaint.

70. Deny the allegations of paragraph 70 of the Complaint.

71. Deny the allegations of paragraph 71 of the Complaint.

72.     Deny the allegations of paragraph 72 of the Complaint.

73.     Deny the allegations of paragraph 73 of the Complaint.

74.     Deny the allegations of paragraph 74 of the Complaint.

75.     Deny the allegations of paragraph 75 of the Complaint.

76.     Defendants re-allege and incorporate by reference each and every response to each paragraph in the Complaint as if fully set forth herein.

77.     Admit that pursuant to Section 7 of the Note, CATV agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by Adar in collection any amount due under the Note, allege affirmatively that no amounts are due under the Note because, *inter alia* it is criminally usurious, and otherwise deny the allegations of paragraph 77 of the Complaint.

78.     Deny the allegations of paragraph 78 of the Complaint.

## SPECIFICALLY STATED DEFENSES

### INTRODUCTION

79.     Defendants have numerous defenses to this action, some of which may be deemed affirmative defenses, and some of which would be cognizable in a motion to dismiss made under Fed. R.Civ.Proc. 12.  Defendants have elected not to move under Rule 12 but to present, both to plaintiff and to the Court, the variety of defenses which call into serious question the merits of plaintiff's claims.

9

80.    Having taken this route, defendants first set forth three defenses which go to the jurisdiction of this Court to entertain this action.  These defenses are placed first as the Court may decide that early briefing and resolution of these defenses may be most efficacious, as their resolution may well determine whether this action can continue in this Court.  There then follow numerous specifically stated defenses which go to the merits of plaintiff's claims.

## FIRST SPECIFICALLY STATED DEFENSE
### LACK OF SUBJECT MATTER JURISDICTION

81.     Plaintiff alleges to be a limited liability company ("LLC"), organized under the laws of the State of Florida, with its principal place of business located in Florida.

82.    Defendant CATV, formerly a Nevada corporation, was reorganized in 2016 as a Florida corporation, and maintains its principal place of business at 23100 SW 192nd Ave., Building B. Miami, FL 33179.  The reorganized corporation, which is not sued herein, is a necessary party to this action.  See Third Specifically Stated Defense, *infra.*

83.    Were Plaintiff a Florida corporation, there is no question that there would be no diversity jurisdiction in this Court because all the relevant parties would be citizens of Florida.

84.    This Court, in common with other Federal courts, has held that the citizenship of an LLC for diversity purposes is the citizenship of each of its members,

10

and that such an entity is not a citizen of the state of its organization or of its principal place of business.

85.   In *Agility Logistics Corp.v. Elegant USA, LLC*, 2009 WL 3094898 (S.D.N.Y. Sept. 25, 2009), this Court wrote: "for the purposes of diversity jurisdiction, a limited liability company's ("LLC") citizenship is determined not by the LLC's place of business, but by the citizenship of each member of the LLC."

86.   In so holding, this Court cited *Carden v, Arkoma Assoc.*, 494 U,S, 185 (1990), a case which held that limited partnerships have the citizenship only of their partners, and *Handelsman v. Bedford Village Assocs., Ltd*, 213 F.3d 48 (2nd Cir. 2000), a case which held that an LLC has the citizenship of each of its members, but is silent on the question of whether it also is a citizen of its state of organization and the state of its principal place of business.  This Court also cited a Southern District case, *Weave Masters, Inc. v. Cambridge Fashion, Inc,* 2009 WL 510834 (S.D.N.Y. Feb. 26, 2009), which holds that an LLC has only the citizenship of its members for diversity purposes, but it remains true to this day that there is neither Supreme Court nor 2nd Circuit precedent sharing the *Agility* holding denying citizenship to LLCs for diversity purposes in precisely those jurisdictions where, were they organized as corporations, such entities are citizens.

87.   There is academic support for the position that an LLC, which like a corporation (and unlike a limited partnership) is solely a creation of a particular jurisdiction, ought to have the citizenship of its state of organization and its state of principal place of business.  See, e.g.,  Kristin Curley, *Achieving the Purpose of Federal*

11

*Diversity Jurisdiction; Why Courts Should Abandon the Current Treatment of LLCs under Section 1332,* 31 Tauro Law Rev.477 (2015), and Debra R. Cohen, *Limited Liability Company Citizenship: Reconsidering an Illogical and Inconsistent Choice*, 90 MARQ. L. REV. 269 (2006).[1]

88.     Particularly in the era of *Daimler AG v. Bauman*, 571 U.S. 117 (2014), it is surely ironic that absent exceptional circumstances, a corporation is subject to general personal jurisdiction in the only two jurisdictions in which it is "at home", the state of its incorporation and the state of its principal place of business, while an LLC is not.  If this Court's holding in *Agility* remains the law, an LLC which is for all practical purposes a corporation will not be "at home" anywhere, and will have jurisdictional advantages unthought of when legislatures created LLCs.

89.     The instant action presents the case for differentiating between the citizenship for diversity purposes between a limited partnership or an unincorporated association on the one hand, and a limited liability company on the other, in a pristine form.  Every relevant and necessary party is a Floridian, and only a Floridian.  Plaintiff's members, according to the complaint, are New Yorkers, but Plaintiff at least as regards its interplay with defendant has nothing to do with New York.

---

[1] To the best of the knowledge of Jeffrey Glen, defendants' lead counsel herein, the arguments for holding that an LLC has the citizenship for diversity purposes of its state of organization and the state of it's principal place of business were first articulated in a legal publication in his article,  Outside Counsel-Limited Liability Companies are not "Citizens" for Federal Jurisdictional Purpose, N.Y.L.J., Feb. 27, 2004.

90.     As illustrated herein, defendants allege that this Court lacks subject matter jurisdiction because plaintiff should be viewed as a citizen of Florida, as well as of New York of which its members are citizens.  For the reasons sketched out here, and which will when appropriate be presented *in extenso* to the Court, defendants present a non-frivolous argument for extending, modifying, or reversing the existing law previously articulated by this Court.

## SECOND SPECIFICALLY STATED DEFENSE
### LACK OF PERSONAL JURISDICTION OVER DEFENDANT FELDENKRAIS

91.     Feldenkrais is a citizen of Florida, and he was served with the summons herein at his residence in Florida.  He is not a signatory to the Note, in which CATV consents to the jurisdiction of this Court. Therefore, there is no general personal jurisdiction over Feldenkrais

92.     None of the conduct of Feldenkrais alleged to render him liable to Adar occurred in New York.  Feldenstein is accused of having received and responded to emails which purportedly indicate that he was preventing CATV from allowing the share conversion.

93.     Feldenkrais received those emails in Florida, and responded to the emails from Florida.

94.     Feldenkrais, who is the Chief Executive Officer of CATV, carries out his duties in Florida, primarily at the CATV offices in Miami.

docs-100400860.4

95.     Because Feldenkrais' acts alleged to constitute tortious interference with the contract between Adar and CATV did not occur in New York, Feldenkrais could only be subject to the personal jurisdiction of this Court if he were personally served with process in New York, or purposely availed himself of the privileges of conducting business in New York.  Neither applies here.

96.     Therefore, this action must be dismissed against defendant Feldenkrais.

## THIRD SPECIFICALLY STATED DEFENSE

### FAILURE TO SUE A NECESSARY PARTY

97.     The parties to the SPA and the Note are Adar Bays, LLC and CATV.

98.     CATV, a Nevada corporation, was reorganized as a Florida corporation with the name 4Cable TV International, Inc, on March 31, 2016, pursuant to then Fla. Stat. Ann. § 607.1115, since repealed and replaced by Fla. Stat. Ann. §§ 607.11933 and 607.11935.

99.     Under Florida law, a non-Florida corporation which is being reorganized as a Florida corporation is known as a "converting eligible entity," and the resulting Florida Corporation is known as the "converted eligible entity."

100.    CATV, the Nevada Corporation sued herein, as a converting eligible entity, has no power to issue shares in the converted eligible entity.

14

101.    Whether a converted eligible entity has an enforceable obligation to issue shares in itself in order to complete or carry out an agreement which called for the issuance of shares in the converting eligible entity, either under the Florida law as it existed at the time of the reorganization or under the current Florida statutes, has not been ruled on in any published judicial decision, and cannot be considered in this action in the absence of the converted eligible entity.

102.    In the absence of the converted eligible entity, were this Court to find that CATV is obligated to issue any shares of stock to Adar – which defendants deny – the Court would be unable to accord complete relief among the existing parties.

103.    Therefore, pursuant to Fed.R.Civ.Proc. 19(1)(A), unless CATV the Florida corporation is added as a party and jurisdiction is appropriately acquired over it, this action must be dismissed.

## **FOURTH SPECIFICALLY STATED DEFENSE**
### **ADAR HAS A FULLY ADEQUATE REMEDY AT LAW**

104.    The First Claim for Relief fails to state a legally cognizable cause of action, because Adar would have a fully adequate remedy at law were it to have suffered any legally compensable damages arising out of the transactions that are the subject of this action.

105.    Therefore, the First Claim for Relief must be dismissed.

## FIFTH SPECIFICALLY STATED DEFENSE

**ADAR HAS ELECTED THE REMEDY OF SUING FOR THE AMOUNT OF THE FUNDS ADVANCED UNDER THE NOTE AND ACCUMULATED INTEREST**

106.    In the Second Claim for Relief, Adar seeks damages for CATV's alleged breach of its obligation to repay the amount advanced pursuant to the Note by the contractual repayment date, together with expectation damages.

107.    Pursuant to the terms of the Note, it carried interest at the rate of 8% per annum for a full calendar year, during which period Adar had the power, at any time, to convert up to the amount of the Note and accrued interest to shares of common stock.

108.    Adar did not initiate the conversion process prior to the Note's maturity date, February 25, 2016.

109.    CATV failed to pay the Note and accumulated interest by the maturity date.

110.    Upon such failure, unless waived by Adar, the Note by its terms was in default, triggering the accrual of interest at a default interest rate of 24% per annum.

111.    Adar failed to waive the default, and thereby elected to increase the interest rate to 24%.

16

112.    Under the terms of the Note, Adar may, but need not, immediately upon an event of default that is not waived, without any period of grace enforce its rights and remedies under the Note or otherwise afforded by law.

113.    Understandably since the default interest rate is 24% while New York's post-default interest rate is 9%, Adar elected not to sue immediately for the amount of the Note and accumulated interest.

114.    Due to its election of remedies, to the extent that the Second Claim for Relief seeks expectation damages, such Claim for Relief must be dismissed.

115.    It is unclear from the Complaint whether Adar is presently seeking "repayment of the amount converted", see Complaint paragraph 38.

116.    New York's statute of limitations for breach of contract being six years, Adar may (subject to the other defenses set forth herein) sue for the amount of the Note and accumulated interest until February 25, 2022.

117.    If, subject to the other defenses set forth herein, this Court were to find that Adar seeks in this action, and is entitled to, "repayment of the amount converted", any such judgment would necessarily be limited to the funds provided pursuant to the Note together with accumulated interest.  If this Court finds that "repayment of the amount converted" is not sought in this action, the action should be dismissed without prejudice to plaintiff's commencing an action for the indicated amount within the relevant statute of limitations, and subject to all the defenses pled herein.

## SIXTH SPECIFICALLY STATED DEFENSE

### THE THIRD CLAIM FOR RELIEF FAILS TO STATE A LEGALLY
### COGNIZABLE CAUSE OF ACTION

118.   Defendants reallege paragraphs 106-117 as if fully set forth herein.

119.   The Third Claim for Relief must be dismissed as duplicative of the claims for monetary damages for breach of contract.

## SEVENTH SPECIFICALLY STATED DEFENSE

### THE FOURTH CLAIM FOR RELIEF FAILS TO STATE A LEGALLY
### COGNIZABLE CAUSE OF ACTION

120.   Because an officer's acts on the corporation's behalf generally are deemed corporate acts, a claim of tortious interference with a contract between such corporation and a third party would have to show that the officer had acted solely in his own interests and had acted willfully and intentionally to serve those interests at the corporation's expense.

121.   Besides there being absolutely no support for the claim that Feldenkrais sought anything from Adar other than a further investment by Adar in CATV, there is not, and on the facts there cannot be, any allegation in the Fourth Claim for Relief that any acts of Feldenkrais were to serve his personal interests at CATV's expense.

122.   Therefore, the Fourth Claim for Relief must be dismissed.

18

## EIGHTH SPECIFICALLY STATED DEFENSE

### THE FIFTH CLAIM FOR RELIEF FAILS TO STATE A LEGALLY COGNIZABLE CAUSE OF ACTION ON BEHALF OF A PRIVATE PLAINTIFF

123.    Adar fails to allege, and cannot allege, that Feldenkrais's purported intent to manipulate the price of CATV's common shares could have injured Adar, since the number of shares to be delivered was a function solely of the conversion price as set by the market before the Notice of Conversion was sent and the decision of Adar to convert was made prior to any alleged relevant conduct of Feldenkrais.

124.    Unless the alleged manipulation can affect the price of the shares paid or offered by a buyer, the proposed buyer cannot allege injury subject to a claim under 10-b-5, and is relegated to its breach of contract claims.

125.    Therefore the Fifth Claim for Relief must be dismissed.

## NINTH SPECIFICALLY STATED DEFENSE

### THE NOTICE OF CONVERSION WAS DEFECTIVE AND VOID

126.    The Notice of Conversion, pursuant to which Adar alleges it became entitled to convert sums claimed to be due under the Note post-default, was defective, because it violated the terms of the Note in at least three respects.

127.    First, pursuant to the Note, the conversion right is exercisable at a per share price calculated at 60% of the lowest closing price in the ten trading days preceding conversion, including the day upon which a Notice of Conversion is received by CATV.

19

128.    Notices under the SPA, pursuant to which the Note was issued, are to be provided by personal service, by registered or certified mail, by air courier service, or by telegram or facsimile. SPA, section 5f.

129.    On information and belief, the Notice of Conversion was never provided by any of the notice mechanisms contained in the SPA.  The only copy of the Notice of Conversion received by CATV in January of 2021 was provided as an attachment to an email from someone named Goldy Greenfeld, with an email address of goldy@major6910.com, apparently emailed at 4:01 pm on January 20, 2021.

130.    Since the Notice of Conversion was not provided pursuant to the terms of SPA, it was never effective.

131.    Second, even assuming that notice by email was effective notice under the SPA, the Notice of Conversion purports to state the conversion price for calculation of the number to shares to be converted as of January 5, 2021.  January 5, 2021, was eleven "trading days" (the term used in the Note and in the SPA) before January 20.   Using the wrong date for the conversion price makes the Notice of Conversion defective and thus unenforceable.

132.    In this regard, it should be noted that the lowest trading price on January 6, 2021, was 9/100[th] of a cent per share.  Thus, the erroneous conversion price was significant, amounting to a ten percent increase in the lowest price, and thus even were the Notice of Conversion effective the number of shares subject to conversion would be reduced by a ten percent factor.

133.    Third, the Notice of Conversion explicitly states that Adar seeks to convert **$21,386.67** of the Note into shares (bold and underlining in original).  The Notice of Conversion accurately states the principal amount and interest then due on the Note, but then miscalculates the number of shares to be delivered as if the entire Note were being converted.  Since the amount that Adar "elects to convert" is specific to the penny, CATV's obligation, were the Notice of Conversion to be deemed to have been effective, was to issue the shares which an accurate conversion price would result in.  At the very least, whether the Notice of Conversion sought to convert what it said, or what Adar now in litigation says it meant to ask for, is ambiguous, and being ambiguous, did not trigger any obligation on the part of CATV to convert shares.

134.    For all these reasons, the Notice of Conversion was defective and void, the conversion of debt to shares has never been effectively invoked by Adar, and therefore this action must be dismissed.

## TENTH SPECIFICALLY STATED DEFENSE

**THE CLAIMED NUMBER OF SHARES WHICH ADAR WOULD HAVE BEEN ELIGIBLE TO RECEIVE WERE THE NOTE AND NOTICE OF CONVERSION TO HAVE BEEN ENFORCEABLE IS VASTLY EXAGERRATED**

135.    Defendants reallege paragraphs 126-134 as if fully set forth herein.

136.    In the event this Court finds that the Note was enforceable and the Notice of Conversion was effective, the number of shares which ought to have been delivered is far less than the amount sought in the Complaint.

137.    Thus, the conversion price per share should have been 60% of 9/100 of a cent, and the sum to be converted should have $21,386.67.  Using these

figures, the total number of shares were a conversion to have occurred would have been roughly 38 million, not 155 million.

## ELEVENTH SPECIALLY STATED DEFENSE

### THE CLAIMED VALUE OF THE CONVERTED SHARES WERE THE NOTE AND NOTICE OF CONVERSION TO HAVE BEEN ENFORCEABLE VASTLY EXAGERRATED

138.    Defendants reallege paragraphs 135-137 as if fully set forth herein

139.    If the Notice of Conversion had been effective, then whatever portion of the outstanding debt under the Note was to be converted was to be converted on the date of conversion specified therein, January 20, 2021.

140.    While, again assuming the Notice of Conversion was effective, the shares were to be transferred by the transfer agent within three business days, the date of the breach – were there one – was the date of conversion.

141.    On January 20, 2021, the median market price of CATV common stock was .0065 dollars per share, which is .065 cents per share.  This translates to $65,000 per ten million shares.

142.    Therefore, even if Adar's calculation that it was entitled to 155,000,000 shares, and as demonstrated repeatedly herein it was not, and even if it were entitled to expectation damages, as it was not, the amount of damages would be almost exactly one million dollars, not the 1.5 million dollars requested by plaintiff. Analogously, the market value of whatever lesser number of shares this Court may hold Adar to have been entitled to must be reduced by one-third.

143.    Further, expert testimony will establish that to the extent that the unconverted shares are to be valued as of January 20, 2021, the dumping of that substantial volume of shares of a thinly traded stock such as CATV common stock would have severely depressed the per share price, thus massively reducing the market value of those shares as of the conversion date.

## TWELTH SPECIFICALLY STATED DEFENSE

### THE NOTE AND ALL CATV OBLIGATIONS THEREUNDER ARE VOID AS BEING A CRIMINALLY USORIOUS TRANSACTION

144.    The transaction between Adar and CATV evidenced by the SPA and the Note is a loan transaction, subject to New York's usury laws.

145.    Since New York law provides that a loan at an interest rate of over 24% is criminally usurious, if any aspect of the transaction between Adar and CATV raises the effective interest rate over 24%, the transaction is criminally usurious.

146.    The Note provides that upon a default in timely payment the principal to be repaid increased by 10%, and in the Notice of Conversion Adar calculates its interest under the Note to include interest at 24% on that increase.  Since an increase in principal has been uniformly held by courts in this Circuit to be an unenforceable penalty, the "interest on interest" brings the true rate of interest on the amount provided to CATV under the Note above the 24% criminal usury rate, whether or not the 10% increase in principal is stricken as an unenforceable penalty.

147.    Further, under section 4(a) of the Note, the right to obtain stock at a price 60% of the lowest market price during the ten trading day period prior to, but

including, the date of the exercise of the conversion right is an original issue discount reserved to Adar.  While there are recent decisions on both sides of the proposition that the reduced share price constitutes an original issue discount which must be construed as additional interest, rendering the transaction criminally usurious, this precise point is presently on review by the New York Court of Appeals on certification from the United States Court of Appeals for the Second Circuit, *Adar Bays, LLC v. Genesys ID, Inc.*, 962 F.3d 86 (2020), certified question accepted 35 NY3d 996 (2020).

148.    A loan transaction that is criminally usurious is void *ab initio*, and the criminal lender may not be granted equitable relief in the form of reducing the collectable interest to 24% per annum.  While there are decisions on both sides of this argument as well, it too is presented by the certification in *Genesys*, and presumably will be decided as well by the New York Court of Appeals.

149.    Because the effective interest rate charged to CATV by Adar incontestably is above the criminal usury rate as demonstrated in paragraph 146, *supra*, and because the original issue discount is to be viewed as additional interest (subject to the ruling of the New York Court of Appeals in *Genesys),* the Note must be declared void

24

**WHEREFORE**, the Complaint should be dismissed, and costs should be awarded to defendants.

Dated:  August 11, 2021          By:

_____
Jeffrey E. Glen, Esq.

ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000
Fax:  (212) 278-1733
Email:  jglen@andersonkill.com

*Attorneys for Defendants 4Cable
International Inc. and Michael
Feldenkrais*

docs-100400860.4